UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BRIAN GAMBON,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　Case No:   6:14-cv-403-Orl-18GJK

**R & F ENTERPRISES, INC.,**

      **Defendant.**

REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** (Doc. No. 20) |
| **FILED:** | **August 29, 2014** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

**I.     BACKGROUND.**

    **A.  The Complaint.**

On March 13, 2014, Plaintiff, a resident of Florida, filed a single-count complaint (the "Complaint") against Defendant, a corporation with its principal place of business in California, alleging that it violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, *et seq*. Doc. No. 1 at ¶¶ 1, 4, 6. The Complaint contains the following relevant allegations. In June 2013, Defendant began placing non-emergency, automated telephone calls to Plaintiff's two (2) cell phones in an effort to market its credit repair and consolidation services. *Id*. at ¶¶ 7, 11-

12, 26. Defendant placed the automated calls to Plaintiff's cell phones using an automatic telephone dialing system ("ATDS") "which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1)."  *Id*. at ¶¶ 8-9.  Defendant did not have "express permission" to call Plaintiff's cell phones, and, on several occasions, Plaintiff requested that he be removed from Defendant's ATDS.  *Id*. at ¶¶ 10, 13, 25.  Despite Plaintiff's requests, Defendant continued to place automated calls to Plaintiff's cell phones even when he ceased answering Defendant's calls.  *Id*. at ¶¶ 15-18.  During the relevant period, Defendant placed approximately three hundred (300) calls to Plaintiff's cell phones.  *Id*. at ¶¶ 7, 19.  Plaintiff alleges that Defendant's actions stem from a corporate policy to place calls to cell phones using an ATDS and/or pre-recorded or artificial voice regardless of whether the called party has consented to such calls.  *Id*. at ¶¶ 20-24.  In light of the foregoing, Plaintiff claims that Defendant "willfully and/or knowingly" violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).  *Id*. at ¶¶ 27-29.  As a result, Plaintiff requests "statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper."  *Id*. at 5.

   **B. Clerk's Default.**

On May 7, 2014, Plaintiff filed a return of service, in which the process server averred that Defendant was served via corporate service on May 1, 2014.  Doc. No. 10.[1]  Specifically, the process server averred that he served the summons and a copy of the Complaint on Ruth

---

[1] Plaintiff originally attempted to serve Defendant on March 21, 2014.  Doc. No. 5.  On March 26, 2014, Plaintiff filed a return of service, in which the process server averred that Defendant was served via substitute service.  *Id*.  Specifically, the process server averred that he served the summons and a copy of the Complaint on Cassandra Sage, a receptionist, at Defendant's place of business in California.  *Id*.  On April 17, 2014, Plaintiff filed a Motion for Clerk's Entry of Default (the "Motion for Clerk's Default").  Doc. No. 8.  On April 21, 2014, the Court entered an order denying the Motion for Clerk's Default on the basis that Plaintiff "failed to demonstrate that he properly served Defendant."  Doc. No. 9 at 2.

Valenzuela, Defendant's agent for service of process. *Id*. On May 29, 2014, Plaintiff filed a Second Motion for Clerk's Entry of Default. Doc. No. 11. On June 17, 2014, the Clerk of Court entered default against Defendant. Doc. No. 12.

### C. Motion for Default Judgment.

On August 29, 2014, Plaintiff filed a Motion for Default Judgment (the "Motion"). Doc. No. 20. In support of the Motion, Plaintiff attached, among other things, affidavits from himself and his counsel. Doc. Nos. 20-6; 20-7. Plaintiff maintains that the allegations in the Complaint and the evidence presented in support of the Motion demonstrate that he is entitled to default judgment against Defendant, and requests an award of $137,500.00 in statutory damages. Doc. No. 20 at 4-7. Plaintiff does not seek any relief beyond his request for statutory damages. *See Id*. at 7.

### II.   STANDARD OF REVIEW.

When a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). However, the mere entry of default by the Clerk does not in itself warrant the entry of default judgment by the Court. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered. *Id*.; *see Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206). Although it must accept well-pled facts as true, the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Notwithstanding the propriety of default judgment against a defendant, it remains incumbent on the plaintiff to prove the amount of damages to which he or she is entitled. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007); *Whole Space Indus., Ltd. v. Gulfcoast Int'l Prods., Inc.*, Case No. 2:09-cv-217-UA-SPC, 2009 WL 2151309, at *3 (M.D. Fla. July 13, 2009) (same). Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were speculative and not proven by a fair preponderance of the evidence).

The Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default. *Anheuser Busch*, 317 F.3d at 1266. Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law

requires the district court to hold an evidentiary hearing to fix the amount of damages. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See Id*. at 1232 n.13; *see also Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

**III.    ANALYSIS.**

  **A. Jurisdiction.**

   **1. Subject Matter Jurisdiction.**

Plaintiff's sole claim against Defendant arises under the TCPA, 47 U.S.C. § 227. Doc. No. 1 at 5. "[F]ederal and state courts have concurrent jurisdiction over private suits arising under the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 745 (2012). Accordingly, the Court has subject matter jurisdiction over this action.

   **2. Personal Jurisdiction.**

In order to determine whether the Court has personal jurisdiction over Defendant, a California corporation, the Court must undertake a two-part analysis. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir. 1996). First, when jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, as is the case here, *see* 47 U.S.C. § 227(b), "Rule 4(e) of the Federal Rules of Civil Procedure directs [courts] to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Id*. at 626-27. If the state long-arm statute provides a basis for personal jurisdiction, the analysis then shifts to the determination of "whether sufficient minimum contacts exist between the defendant[] and

the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Id*. at 626 (internal quotation omitted).

Plaintiff alleges that Defendant conducts business in Florida (Doc. No. 1 at ¶ 6), thus suggesting that personal jurisdiction is proper under the provision of Florida's long-arm statute stating that any person "[o]perating, conducting, engaging in, or carrying on a business . . . in this state" subjects himself or herself to the jurisdiction of the state. Fla. Stat. § 48.193(1)(a)(1). Specifically, Plaintiff alleges that Defendant is conducting business in Florida by virtue of placing numerous automated calls to his cell phones in an effort to market its credit repair and consolidation services. Doc. No. 1 at ¶ 12.[3] Plaintiff, a resident of Florida, alleges that he received all of the calls while he was in Brevard County, Florida. *Id*. at ¶¶ 3-4. Defendant has provided nothing in response to Plaintiff's allegation that the Court has personal jurisdiction over it.[4] Accepting the well-pled allegations of the Complaint as true, the undersigned finds that the Court has personal jurisdiction over Defendant, consistent with the requirements of due process. *See, e.g.*, *Tacoronte v. Tate & Kirlin Assocs.*, Case No. 6:13-cv-331-Orl-37DAB, 2013 WL 5970720, at *4 (M.D. Fla. Nov. 8, 2013) (finding personal jurisdiction over nonresident defendant where defendant was registered as debt collector in Florida and contacted plaintiff via the mail and phone calls in an attempt to collect a debt from her in Florida); *Smith v. Royal Oak Fin. Servs.,*

---

[3] Although Plaintiff alleged that he received approximately three hundred (300) automated calls from Defendant, he subsequently averred that he has received ninety-three (93) automated calls during the relevant period. *Compare* Doc. No. 1 at ¶ 7 *with* Doc. No. 20-6 at ¶ 8.

[4] On April 2, 2014, Defendant's counsel sent Plaintiff's counsel a letter explaining that he had brought suit against the wrong entity, and requested that he dismiss this action. Doc. No. 20-1. Plaintiff represents that he conducted further investigation into the issue, but "found strong evidence that . . . Defendant is . . . the company calling [him]." Doc. No. 20 at 2. On April 8, 2014, Plaintiff's counsel sent Defendant's counsel a letter indicating that he disagreed with Defendant's position, and stated that he would not dismiss the action. Doc. No. 20-2. Plaintiff represents that Defendant never responded to his April 8, 2014 letter. Doc. No. 20 at 2. Further, Defendant has failed to appear for the purpose of challenging whether it is the entity that placed automated calls to Plaintiff's cell phones. Therefore, the Court accepts the well-pled allegations that Defendant (and not some other entity with a similar business name) repeatedly placed automated calls to Plaintiff's cell phones as true.

*Inc.*, Case No. 3:11-cv-543-J-34JRK, 2012 WL 3290153, at *2 (M.D. Fla. June 18, 2012) (finding personal jurisdiction over nonresident defendant where defendant repeatedly placed threatening phone calls to plaintiff, a Florida resident, in an attempt to collect a debt).

**B. TCPA.**

The TCPA prohibits certain telephonic communications made by, or directed to, individuals within the United States. *See* 47 U.S.C. § 227(b)(1). In relevant part, the TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice - -
>
> . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

*Id.* at § 227(b)(1)(A)(iii). Accordingly, in order to establish a prima facie case under 47 U.S.C. § 227(b)(1)(A)(iii), the plaintiff must demonstrate the following: 1) defendant made a telephone call that either originated in the United States or was received in the United States; 2) using any ATDS or artificial or prerecorded voice; 3) to a telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. *Id.*[5] Telephone calls that otherwise

---

[5] The Eleventh Circuit recently clarified that the reference in § 227(b)(1)(A)(iii) to the called party being "charged for the call" does not apply to calls placed to cell phones. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1258 (11th Cir. 2014).

violate § 227(b)(1)(A)(iii) may nevertheless be lawful if they were made "for emergency purposes or made with the prior express consent of the called party[.]" *Id*. at § 227(b)(1)(A). However, the purpose of the call and existence of prior express consent are not elements of a prima facie case under 47 U.S.C. § 227(b)(1)(A)(iii), but rather are affirmative defenses for which the defendant bears the burden of proof. *E.g.*, *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011) (citing 23 F.C.C.R. 559, 565 (Jan. 4, 2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.")); *Murphy v. DCI Biologicals Orlando, LLC*, Case No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772, at *4 (M.D. Fla. Dec. 31, 2013) (citing *Buslepp v. B & B Entm't, LLC*, 2012 WL 4761509, at *4 (S.D. Fla. Oct. 5, 2012)).

Plaintiff, through the well-pled allegations of the Complaint and his uncontroverted affidavit, has established the following facts relevant to the issue of liability. In June 2013, Defendant began placing automated telephone calls to Plaintiff's cell phones in an effort to market its credit repair and consolidation services. Doc. Nos. 1 at ¶¶ 11-12; 20-6 at ¶ 2.[6] Plaintiff's cell phone records indicate that he received a total of eighty (80) calls from Defendant between June 2013 and July 2, 2014. Doc. No. 20-6 at ¶¶ 6-7.[7] Defendant has placed an additional thirteen (13) calls to Plaintiff's cell phones since July 2, 2014. *Id*. at ¶ 7. All of the calls Plaintiff has received from Defendant were received while he was in the United States and were made using an ATDS. Doc. No. 1 at ¶¶ 3, 8-9, 29. Further, none of the automated calls were made for emergency purposes or with Plaintiff's prior express consent. Doc. Nos. 1 at ¶¶ 10, 25-26, 29;

---

[6] The cell phone numbers associated with the cell phones at issue are registered in Plaintiff's name. Doc. No. 20-6 at ¶ 2. Therefore, Plaintiff is the "called party" as defined by the TCPA. *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir. 2014) (recognizing that the "'called party,' for purposes of § 227(b)(1)(A)(iii), means the subscriber to the cell phone service.") (citing *Osorio*, 746 F.3d at 1251).

[7] The cell phone records Plaintiff reviewed only documented calls made through July 2, 2014. Doc. No. 20-6 at ¶ 7.

20-6 at ¶ 3. The uncontroverted allegations and evidence demonstrate that Defendant violated the TCPA on ninety-three (93) separate occasions. Accordingly, it is **RECOMMENDED** that the Court find that Plaintiff is entitled to default judgment on his claim that Defendant violated the TCPA.

### C. Damages.

Plaintiff seeks a total of $137,500.00 in statutory damages, which represents $500.00 for the first two (2) automated calls he received from Defendant, and $1,500.00 for the following ninety-one (91) automated calls he received from Defendant. Doc. No. 20 at 5-7.[8] The TCPA creates a private right of action for violations of § 227(b)(1)(A)(iii). 47 U.S.C. § 227(b)(3). Successful plaintiffs are entitled to an injunction, *id*. at § 227(b)(3)(A), actual losses caused by the violation or $500 for each violation (whichever is greater), *id*. at § 227(b)(3)(B), or both injunctive relief and money damages, *id*. at § 227(b)(3)(C). "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." *Id*. at § 227(b)(3). "The TCPA is essentially a strict liability statute that does not require any intent for liability except when awarding treble damages." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) (internal quotations omitted) (citing *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011)).

Plaintiff, through the well-pled allegations of the Complaint and his uncontroverted affidavit, has established the following facts relevant to the issue of damages. Plaintiff "has never

---

[8] The damages Plaintiff seeks are liquidated. *See Coniglio v. Bank of Am., N.A.*, Case No. 8:14-cv-1628-EAK-MAP, 2014 WL 5366248, at *5 (M.D. Fla. Oct. 21, 2014) ("The damages provided under the TCPA are liquidated damages."). Therefore, a hearing on damages is unnecessary.

had any business dealings with Defendant," "is not aware of how Defendant acquired his [cell phone] numbers," and never gave Defendant express consent to place automated calls to his cell phones. Doc. Nos. 1 at ¶¶ 10, 14, 25; 20-6 at ¶ 3. After Defendant's first two (2) calls, Plaintiff requested that he be removed from Defendant's ATDS. Doc. No. 20-6 at ¶ 4. Despite this request and other subsequent requests to be removed from Defendant's ATDS, Defendant continued to place automated calls to Plaintiff's cell phones. Doc. Nos. 1 at ¶¶ 13, 15-18; 20-6 at ¶¶ 5, 8-9. The uncontroverted allegations and evidence demonstrate that Defendant willfully and knowingly violated the TCPA on at least ninety-one (91) separate occasions. Accordingly, it is **RECOMMENDED** that the Court award Plaintiff a total of $137,500.00 in statutory damages as a result of Defendant's willful and knowing violations of the TCPA.

IV. **CONCLUSION.**

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. No. 20) be **GRANTED**;

2. The Court enter judgment in favor of Plaintiff and against Defendant, in the total amount of $137,500.00 in statutory damages; and

3. Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 2, 2014.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy